UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-00521-MOC-DCK

| | | |
|---|---|---|
| **DEB USA, INC.,** | ) | |
| **DEB IP LTD.** | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **CWGC LA INC.,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Alternative Motion to Transfer (#15). In a prior Order (#47), the court granted the parties leave to take limited jurisdictional discovery. That review has concluded, and the matter has been fully briefed. The case is ripe for review. Having considered the pleadings and the record in this matter, the court enters the following Order.

**FINDINGS AND CONCLUSIONS**

I.   **BACKGROUND**

This is a patent case between businesses in the soap industry. A dispute bubbled-up regarding an alleged infringement of a patented foam soap dispensing device and related cartridges. In its Complaint (#1), plaintiffs DEB USA, Inc. and DEB IP Ltd. (collectively "DEB") asks the court to resolve that dispute in this, plaintiff's home district. Defendant CWGC LA Inc. requests that the court wash its hands of the case, by either dismissing the

case outright or transferring the matter to another district.

While claiming that defendant had Carolina in its mind[1] when it sold its allegedly infringing cartridges, the facts developed during jurisdictional discovery show a tepid stream of commerce in unrelated goods and no sales of allegedly infringing goods in the forum state. As defendant's lack of contacts with the forum do not support a finding of personal jurisdiction, this case will be transferred to a forum where jurisdiction is properly laid, the Central District of California, for the reasons that follow.

## II. APPLICABLE STANDARDS

### A. PERSONAL JURISDICTION

Rule 12(b)(2), Federal Rules of Civil Procedure, provides for dismissal where the court lacks personal jurisdiction over a particular named defendant. In the Fourth Circuit, the standard for deciding a motion based on Rule 12(b)(2) was set forth in Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989), where it explained that a plaintiff has the burden to prove personal jurisdiction by a preponderance of the evidence.

When a factual dispute arises as to whether or not jurisdiction exists, the court may either conduct an evidentiary hearing or defer ruling on the matter until it receives evidence on the jurisdictional issue at trial. Id. When a court decides the issue on the record then before it, the court may consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," and the burden

---

[1] See JAMES TAYLOR, CAROLINA IN MY MIND (Apple 1968) ("I'm gone to Carolina in my mind…You must forgive me, if I'm up and gone to Carolina in my mind.").

is plaintiffs' "to make a mere *prima facie* showing of jurisdiction to survive the jurisdictional challenge." Clark v. Milam, 830 F.Supp. 316, 319 (S.D.W.Va.1993) (citations omitted).  Here, the court has allowed jurisdictional discovery and has reviewed the evidence that process has uncovered.

A court must resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the *prima facie* showing. Bakker, at 676.  Such resolution must include construing all relevant pleadings in a light most favorable to the plaintiff, assume the credibility of any affiant, and must draw the most favorable inferences for the existence of jurisdiction. Id.; see also Thomas v. Centennial Commc'ns Corp., 2006 WL 6151153, at *2 (W.D.N.C. Dec. 20, 2006).  While jurisdictional discovery has been permitted, no formal evidentiary hearing has been conducted to resolve disputed issues of jurisdictional fact. As such, plaintiffs must only make a prima facie case that the court has personal jurisdiction over defendant, which "is established if the plaintiff presents sufficient evidence to defeat a motion for directed verdict." ATI Indus. Automation, Inc. v. Applied Robotics, Inc., No. 1:09CV471, 2013 WL 1149174, at *2 (M.D.N.C. Mar. 19, 2013) (quoting 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE § 12.31[5])). In determining whether plaintiff has made the requisite showing upon a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor. Elecs. For Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

-3-

Ultimately, plaintiffs must show that the exercise of personal jurisdiction over a defendant complies with the forum state's long-arm statute and the constitutional requirements of due process. Grober v. Mako Products, Inc., 686 F.3d 1335, 1345 (Fed. Cir. 2012), reh'g denied (Sept. 14, 2012). Since North Carolina's long-arm statute extends jurisdiction to the outer limits of due process, the jurisdictional analysis merges into a single due process inquiry. Thomas, 2006 WL 6151153, at *2.

### 1.     General Jurisdiction

To be consistent with the limitations of due process, a defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).   Minimum contacts may be established by showing "general" or "specific" jurisdiction. Helicopteres Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  A court may exercise general jurisdiction over a non-resident defendant if the defendant has contacts with the State that are so "continuous and systematic" as to render them "essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). The court cannot find allegations sufficient to establish general jurisdiction over this defendant.

### 2.     Specific Jurisdiction

In the absence of general jurisdiction, a court may exercise specific jurisdiction over the defendant where the cause of action arises out of defendant's activities in the forum state.  In analyzing specific jurisdiction over a defendant, courts consider whether: "(1) the

defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." Grober v. Mako Products, Inc., 686 F.3d 1335, 1346 (Fed. Cir. 2012) (citation omitted). Plaintiff has the burden of making a *prima facie* showing of specific jurisdiction by satisfying the first two elements.  The burden then shifts to defendant to show that such assertion of personal jurisdiction is not reasonable and fair. Id.

### 3.    Stream of Commerce

Where a defendant's contacts with the forum state are indirect and only the result of an intermediary distributorship arrangement, the Federal Circuit has explained that a "stream of commerce" theory is to be applied in lieu of the typical concepts of specific and general jurisdiction. Viam Corp. v. Iowa Exp.-Imp. Trading Co., 84 F.3d 424, 427 (Fed. Cir. 1996); see also Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1566 (Fed. Cir. 1994). The law governing this theory has been concisely summarized by the Federal Circuit:

> In World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980), the Supreme Court stated that a defendant could purposefully avail itself of a forum by "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum [s]tate." In Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102 (1987), a plurality of four justices concluded that something more was required—"*an action of the defendant purposefully directed toward the forum state.*" Id. at 112 (emphasis in original). The cited examples of purposeful direction included "marketing through a distributor ... in the forum [s]tate" and "providing regular advice to customers." Id. Four other

justices considered the showing of additional conduct unnecessary. Id. at 117.

Nuance Commc'ns, Inc. v. Abbyy Software House, 626 F.3d 1222, 1233 (Fed. Cir. 2010). Like the Supreme Court, the Federal Circuit has not yet decided whether "something more than the mere act of placing a product in the stream of commerce with the expectation that it would be purchased in the forum state" is required to establish jurisdiction. Id. at 1234 (citing Beverly Hills Fan, 21 F.3d at 1566). See also Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1332 (Fed. Cir. 2008) ("We have also applied the stream of commerce theory, although we have not resolved the split in authority reflected in the competing plurality opinions in Asahi); AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358, 1365 (Fed. Cir. 2012). However, under either version of the stream of commerce theory, where an alien Defendant: 1) places the accused product into the stream of commerce, 2) knows or should know the likely destination of the product, and 3) its conduct and connections with the forum state are such that it may reasonably foresee being haled into court within that forum, exercise of jurisdiction under the stream of commerce theory is appropriate. Beverly Hills Fan, 21 F. 3d at 1566. Thus, if the manufacturer purposefully ships the accused products into the forum state through an established distribution channel, with the expectation that those products will be sold in the forum, such action is sufficient to give rise to a proper assertion of jurisdiction. Nuance Commc'ns, 626 F.3d at 1233-34.

### B.     TRANSFER OF VENUE

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Id. 28 U.S.C. § 1400(b), which specifically governs venue in patent actions, provides, "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Id. A motion to transfer pursuant to § 1404(a) in a patent case requires application of the law of the regional circuit. In re Link_A_Media Devices Corp., 662 F.3d 1221, 1222-23 (Fed. Cir. 2011).

Upon a motion to transfer, the moving party carries a heavy burden. Duke Energy Florida, Inc. v. Westinghouse Elec. Co., No. 3:14-CV-00141-MOC, 2014 WL 2572960, at *5 (W.D.N.C. June 9, 2014) (citing Datasouth Computer Corp. v. Three Dimensional Technologies, Inc., 719 F.Supp. 446, 451 (W.D.N.C. 1989)). A court's decision to grant a motion to transfer venue under 28 U.S.C. § 1404(a) is largely discretionary. 3A Composites USA, Inc. v. United Indus., Inc., No. 5:13CV83-RLV, 2014 WL 1471075, at *1 (W.D.N.C. Apr. 15, 2014) (citing Landers v. Dawson Const. Plant Ltd., 201 F.3d 436, 1999 WL 991419, *2 (4th Cir. 1999)). In exercising such discretion, the court applies a balancing test and considers various factors in deciding whether transfer is appropriate. Jim Crockett Promotions, Inc. v. Action Media Grp., Inc., 751 F.Supp. 93 (W.D.N.C. 1990). The factors to be considered include:

1. The plaintiff's initial choice of forum;

2. The residence of the parties;

3. The relative ease of access of proof;

4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

5. The possibility of a view by the jury;

6. The enforceability of a judgment, if obtained;

7. The relative advantages and obstacles to a fair trial;

8. Other practical problems that make a trial easy, expeditious, and inexpensive;

9. The administrative difficulties of court congestion;

10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with state law that must govern the action; and

11. The avoidance of unnecessary problems with conflict of laws.

Id.  "The above factors fall into three categories: (1) factors that favor neither party, (2) factors that favor Defendant, and (3) factors that favor Plaintiff."  Cohen v. ZL Technologies, Inc., No. 3:14-CV-00377-FDW, 2015 WL 93732, at *2 (W.D.N.C. Jan. 7, 2015) (citing Crockett, 751 F. Supp. at 98). The court must analyze the eleven factors based on quality, not just quantity. Id. (citing Crockett, 751 F. Supp. at 96). In most cases, the plaintiff's choice of forum should be given significant weight, and should not be disturbed unless the balance is strongly in favor of transfer. Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). A motion should not be granted if transfer "would merely shift the inconvenience from the defendant to the plaintiff, or if the equities lean but slightly in favor of the movant after all factors are considered." Jim Crockett Promotions, Inc. v. Action Media Grp., Inc., 751 F. Supp. 93, 95 (W.D.N.C. 1990).

On a motion to transfer, the facts as alleged in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. <u>Century Furniture, LLC v. C & C Imps., Inc.</u>, No. 1:07cv179, 2007 WL 2712955, at *2 (W.D.N.C. Sept. 14, 2007).

As noted elsewhere in this District, "While a court typically decides the question of personal jurisdiction over a defendant before considering venue, the Supreme Court has held that 'when there is a sound prudential justification for doing so, ... a court may reverse the normal order of considering personal jurisdiction and venue.'" <u>BSN Medical, Inc. v. American Medical Products</u>, LLC, 3:11cv092-GCM-DSC, 2012 WL 171269, at *2 (W.D.N.C. Jan. 20, 2012) (citing <u>Leroy v. Great W. United Corp.</u>, 443 U.S. 173, 180 (1979)). "A court need not have personal jurisdiction over a defendant to transfer a case pursuant to 28 U.S.C. §§ 1404(a) or 1406(a)." <u>Id.</u>

## III.   DISCUSSION

### A.   INTRODUCTION

There are two primary issues before the court: (1) whether defendant is subject to personal jurisdiction in North Carolina; and, if not, (2) should the matter be dismissed outright or transferred to a California federal court. The court will address these questions *seriatim* below.

#### 1.   PERSONAL JURISDICTION

Plaintiff DEB alleges that defendant is subject to personal jurisdiction either under a specific jurisdiction theory or a "stream of commerce" theory. *Inter alia*, plaintiff avers that defendant is a California corporation planning to expand its warehouses to include

Atlanta. (#36) at 2. Plaintiff alleges that an email was sent regarding defendant's products potentially being sold in North Carolina. (#36) at 2.

Under a specific jurisdiction theory, plaintiff bears the burden of proving the first two elements of the <u>Grober</u> test, namely that "the defendant purposefully directed its activities at residents of the forum state" and that "the claim arises out of or relates to the defendant's activities with the forum state." <u>Grober</u>, 686 F.3d at 1346. As to the purposeful direction toward North Carolina, DEB claims that defendant used a third party that had distribution centers in the state and sent at least two emails into the state. (#36) at 9.

In part, the plaintiff argues that the defendant's use of a third party distributor with connections to North Carolina means that defendant has purposefully directed its own activities to North Carolina. (#36) at 8-9 ("The act of utilizing a distributor with established North Carolina distribution centers to market and distribute the [Product] is sufficient on its own to demonstrate that Defendant purposefully directed its activities at North Carolina."). The court declines to make such a finding.[2] As the Fourth Circuit has noted, "[i]t is firmly established that 'the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.' Jurisdiction cannot be manufactured by the conduct of others." <u>Chung v. NANA</u>

---

[2] Taken to its logical conclusion, the plaintiff's argument may undermine the goals of personal jurisdiction jurisprudence, which examine the actions of a *defendant* rather than jurisdiction-by-association. For example, if company A ships a package to customer B in another jurisdiction the court should look to that shipment not the distributional supply chains of the distributor used elsewhere in the country. For a further discussion of the "unilateral activity" rule, see <u>Heliocopteros Nacionales de Columbia v. Hall</u>, 466 U.S. 408, 416-17 (1984).

Dev. Corp., 783 F.2d 1124, 1127–28 (4th Cir. 1986).

Following jurisdictional discovery, the plaintiff has offered no evidence that any of the defendant's product in question here was ever distributed by that third-party into North Carolina. Indeed, plaintiff's supporting affidavit (#26) does not claim that the defendant ever made an actual sale in North Carolina nor did it direct its third-party distributor to market or deliver product into the state. (#26) at 3-4 (stating that the third-party distributor had approached clients in California, Illinois, New York, and Florida). As such, the relationship with the third-party distributor is insufficient to establish purposeful direction as presently presented.

DEB claims that defendant had an elaborate scheme to creep "inexorably closer to DEB's headquarters in North Carolina," (#36) at 8. As part of this plan, DEB alleges that defendant marketed its product via email at least once to a North Carolina company. (#36) at 9. Further, the Vice President of Marketing for DEB, avers that she posed as potential customer, called the defendant's office, and made an artificial request for product to be used in a small office in Charlotte, North Carolina. (#26) at 4. Neither of these items are sufficient to impose personal jurisdiction upon defendant. First and foremost, defendant has neither sold any of the product in question within North Carolina, nor has it advertised or promoted any of this product within the state other that this singular email message. *See* (#16) at 11; Bai Declaration (#18) at ¶¶ 18, 31-33, 38-40. As for the second purported email, to a DEB employee posing as a potential customer, the court will invoke the "unilateral activity" rule, which "prohibits the finding of personal jurisdiction where…a

-11-

plaintiff attempts to manufacture jurisdiction by initiating an order with a distant defendant." <u>Ranjo's Inc. v. SSPS, Inc.</u>, No. 1:01CV96-C, 2001 WL 1563715, at *3 (W.D.N.C. Nov. 30, 2001). Here, plaintiff cannot show that defendant has sold, shipped, or formally solicited sales in North Carolina beyond the transmission of general product information. As such, the court cannot conclude that specific jurisdiction is appropriate here.

### 2.   STREAM OF COMMERCE

DEB further argues that the defendant placed the product in question into the "steam of commerce," with actual or constructive knowledge of its potential use in North Carolina. In support of this claim, DEB again notes the emails and third-party distributor, arguing that "Defendant intends to compete with DEB by selling the Accused Product throughout the southeastern United States, including North Carolina." (#13) at 13. Unlike the meanderings of a slow moving river, determining jurisdiction based on a stream of commerce theory does not include a court speculating or predicting what course that stream may take in the future.  Rather, the court is confined to a snapshot in time and cannot read from defendant's warehouse placement its "creeping" future plans.  Put another way, just as personal jurisdiction cannot be manufactured by stealthy actions of plaintiff's employees, this court cannot create jurisdiction from the whole cloth of speculation. While it is certainly possible that defendant will sell its product in North Carolina in the future, the facts on the ground at this moment are undisputed that none of the product at issue in this case has ever been found in North Carolina.

The first prong of the "stream of commerce" test is uncontroversial: the defendant placed an item into the stream of commerce and shipped it in interstate commerce. What is disputed is whether defendant had knowledge that it would end up in North Carolina. To support its burden, DEB relies on its own allegation that the products in question were sold "throughout the United States, including this judicial District." Complaint (#1) ¶ 6; (#36) at 12.  After benefit of jurisdictional discovery, defendant has, however, demonstrated that it sold none of the product in question to North Carolina consumers and a *de minimis* amount of unrelated product (such as toilet seat covers) to North Carolina customers. (#50) at 5; Third Bai Declaration (#55) ¶¶ 12-17. Moreover, such *de mimimis* contact and unrelated connections to the forum state could not have enabled the defendant to reasonably foresee being brought to a North Carolina court over a product they did not sell, advertise, or distribute in this state.

The court has also received and reviewed the plaintiff's supplemental memorandum of law (#63). The court notes that the accompanying Consent Motion to Seal this document is under review by Magistrate Judge Keelser. *Inter alia*, the plaintiff argues that the court should not consider defendant's filing as it was filed hours after the deadline. As the comment to Federal Rule of Civil Procedure 6 notes, "Rule 6(b) is a rule of general application giving wide discretion to the court to enlarge these time limits or revive them after they have expired." Comment to Rule 6(b). In its discretion, the court will and has reviewed the defendant's filing. Plaintiff further argues that defendant "participates in North Carolina's economic markets," and notes that defendant sold $37,755 worth of

product to North Carolina in 2016. (#63) at 7-8. The court notes the plaintiff's own figure, that these sales represented less than 1% of CWGCLA's sales that year, supporting a *de minimis* finding. (#63) at 9. Other arguments largely repeat assertions plaintiff has made in earlier filings and suffer similar infirmities. For example, plaintiff argues that defendant should be subject to Stream of Commerce jurisdiction as they contract with the Cascade Tissue Company and that company has production facilities in North Carolina. (#63) at 14. The juxtaposition is meant to imply to the court a logical connection, but it does not complete the argument. As noted above, the personal jurisdiction analysis looks to the action of the *defendant* or an agent acting under defendant's agency. Here, insufficient jurisdictional evidence has been produced to suggest that the defendant should be subject to personal jurisdiction under any theory.

Accordingly, the court finds that personal jurisdiction is lacking in this case. Rather than dismiss the case, the court will for the reasons that follow <u>grant</u> the alternative motion to transfer venue rather than dismiss this case.

### B.   TRANSFER OF VENUE

Transfer of venue is discretionary. <u>3A Composites USA, Inc.</u>, 2014 WL 1471075, at *1. As noted above, the court exercises such discretion through the application of a balancing test using a number of factors. See <u>Jim Crockett Promotions, Inc.</u>, 751 F.Supp. 93. After a review of the available factors, the court deems it proper to transfer the case to the Central District of California.

As plaintiff noted, many of the factors in the <u>Crockett</u> evaluation are neutral when

-14-

applied here. These include the possibility of a view by a jury, enforceability of a judgment, relative advantages to fair trial, practical issues affecting the trial process, avoidance of conflict of laws, and relative court congestion. In addition, the factor relating to the residency of the parties is also neutral to the court.

As for the remaining factors, the plaintiff's initial choice of forum is generally granted considerable weight. However, it is given far less weight if it is not the place where the operative events occurred. See Crockett, 751 F. Supp. at 96. In patent infringement cases, the preferred forum is the center of accused activity, and that will most often be where the offending device is produced. Sandvik Intellectual Prop. AB v. Kennametal Inc., No. CIV.1:09CV163, 2010 WL 1924504, at *8 (W.D.N.C. May 12, 2010) (citations omitted). Here, the accused product is manufactured in China on behalf of a California company. For purposes of this determination, the product was selected, purchased, and marketed by defendant out of California and was manufactured by a Chinese supplier. The operative events are deemed to have occurred outside of North Carolina, rendering this factor neutral if not slightly in favor of transfer to California inasmuch as the domestic operative events occurred in that state.

The availability of compulsory process and costs of attendance factor is either neutral or favors transfer. While DEB expects to call witnesses from North Carolina and the United Kingdom, the defendant expects to call witnesses from California and Oklahoma. There will be a need for individuals to travel regardless of where this case is

heard, but the factor marginally favors transfer to California.[3]

As for ease of access to evidence, that factor favors transfer. As the Federal Circuit has noted, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." See In re Genentech, Inc., 566 F.3d 1338, 1345 (Fed.Cir.2009) (citation omitted); accord Celgard, LLC v. LG Chem, Ltd., No. 3:14-CV-00043-MOC-DC, 2015 WL 2412467, at *9 (W.D.N.C. May 21, 2015).

As for localized controversies, the court accepts that no commercial sales of the product at issue in this case have ever occurred in North Carolina and only a *de minimis* amount of unrelated product has been sold there. On the other hand, defendant is a California company that maintains warehouses there. As such, this factor favors transfer.

Accordingly, the court will grant defendant's Motion to Transfer the matter to the Central District of California as both quantitatively and qualitatively several Crockett factors favor transfer, no factors favor retaining the case in North Carolina, and other factors are neutral.

## II.  CONCLUSION

After performing the nitty-gritty work of personal jurisdiction analysis, the court will grant the Motion to Dismiss between these soap companies. For the reasons noted

---

[3] Whether this factor was neutral or favoring transfer would not affect the eventual outcome of this matter as none of the Crockett factors favor retaining the case in North Carolina, several are neutral, and several factors favor transfer.

-16-

above, as it finds that personal jurisdiction is lacking in North Carolina. Rather than dismiss the case, the court will exercise its discretion, taking into account the relevant <u>Crockett</u> factors, and transfer the case to a more appropriate jurisdiction.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Dismiss for Lack of Personal Jurisdiction, is **DENIED** without prejudice, and the Alternative Motions to Transfer (#15) is **GRANTED,** and this matter is TRANSFERRED to the United States Court for the Central District of California for disposition.

The Clerk of Court is instructed to facilitate the electronic transfer of this matter to that district.

Signed: February 13, 2017

Max O. Cogburn Jr.
United States District Judge